CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

March 28, 2025

LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| **RONNIE VAUGHN,** | ) | |
| Plaintiff, | ) | Civil Action No. 7:22cv00178 |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| **J. BROWN, et al.,** | ) | By: Robert S. Ballou |
| Defendants. | ) | United States District Judge |

Ronnie Vaughn, a federal inmate currently incarcerated at USP McCreary, has filed this lawsuit under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), against several Federal Bureau of Prisons employees at U.S.P. Lee in Lee County, Virginia.  The defendants have filed a Motion to Dismiss or in the alternative, a Motion for Summary Judgment, to which the plaintiff has responded.  Upon consideration of the pleadings and the law, I must grant the Motion to Dismiss for the following reasons.

## I.  FACTUAL BACKGROUND

In considering a Motion to Dismiss, the court must accept as true all well-pleaded facts in the complaint and draw all reasonable inferences in the plaintiff's favor.  *Langford v. Joyner*, 62 F.4th 122, 124 (4th Cir. 2023).   In the light most favorable to the plaintiff, this suit is based upon the following events as set forth in his Second Amended Complaint (ECF No. 18) and Supporting Facts (ECF No. 18-1).

On November 17, 2021, Officer Bradburn led Vaughn to a "blind spot" (area not captured on surveillance video) under the stairs in the Building 2 courtyard at USP Lee, where he proceeded to assault Vaughn, punching him in the face, throwing him on the ground, and choking him.  Vaughn sustained an abrasion on his lower lip, and the side of his face was swollen from impact with the ground.  Bradburn then put Vaughn in handcuffs and alleged that Vaughn had

assaulted him. Vaughn was taken to the Special Housing Unit ("SHU") and placed in ambulatory restraints around 6:45 p.m. because of the alleged assault on Officer Bradburn.

Officers Brooks, Ewing, and Dickerson placed the restraints on Vaughn and then began assaulting him. Brooks punched him in the face five or six times; Dickerson kicked him in the ribs several times, and Ewing smashed his face into the wall, nearly breaking his nose. Lt. Thomas, who was supposed to videotape the restraints being placed, left the room before anything happened and did not record anything.

Once the ambulatory restraints were in place, Vaughn was moved to the suicide tank. Lt. Hamilton came into the tank every two hours to check his restraints. Whenever Hamilton entered the tank, Vaughn was ordered to get on his knees. Brooks, Ewing, and Dickerson would come into the tank with Hamilton, carrying shields which they used to ram his face into the wall and to press down onto his ankles. Dickerson repeatedly kneed Vaughn in the ribs, and Ewing stood on the back of Vaughn's legs, causing the leg restraints to cut into Vaughn's skin. Neither Hamilton nor Thomas videotaped the officer contacts with Vaughn every two hours. Vaughn remained in the restraints for approximately 20 hours, being assaulted every two hours. He was denied medical assistance and medical personnel refused to document any injuries, although he had black eyes, a swollen face and nose, and injuries to his wrists and ankles from the restraints.

At 3:45 p.m. on November 18, 2021, Associate Warden Goldey allowed Vaughn to be removed from restraints. Seeing the condition of Vaughn's face, Goldey directed Thomas to videotape Vaughn's face. That video is the only documentation of the injuries he suffered.

On the evening of November 19, 2021, Vaughn was served notice of disciplinary charges for possession of a dangerous weapon in his cell and assaulting Officer Bradburn with no serious injury. His hearing date was scheduled for February 10, 2022. Contrary to BOP policy

2

recommendations, he was not served within 24 hours of the alleged offenses, which occurred on November 17. Vaughn objected to the late notice. The hearing officer, defendant Brown, determined that notice was delayed because Vaughn was in ambulatory restraints during that 24-hour time period. Vaughn contests this finding, because he was not in restraints for a full 24 hours; he contends that the delay in giving notice occurred because officers spent their time assaulting him while he was restrained and that the delay violated his due process rights.

On November 24, 2021, Vaughn identified five inmate witnesses that he wanted to testify at the hearing. Their testimony was not permitted, nor did Brown accept statements from them. Vaughn prepared written statements on November 24, 2021; January 20, 2022, and February 9, 2022. He also asked Brown to review the video of his injuries and to admit the documentation form showing when he was placed into and removed from the ambulatory restraints. Vaughn contends that Brown refused to view the video and did not consider Vaughn's statements and other documentation. Vaughn filed a written complaint with the Warden about the procedural/due process violations in his case, but Warden Streeval failed to address them or respond, hampering Vaughn's ability to proceed further with the grievance process. Following the hearing, Brown issued a report, finding Vaughn guilty of both charges. As a result, Vaughn spent 175 days in segregation and was transferred to a special management unit for 13 months.

## II. Claims and Defenses

Vaughn raises the following claims:

1. Excessive and unnecessary force by Officer Bradburn, in violation of Vaughn's Eighth Amendment rights;

2. Excessive force by Officers Brooks, Ewing, and Dickerson, in retaliation for Bradburn's [allegedly false] assault charge against Vaughn;

3

3. Failure to protect and bystander liability against Lt. Thomas and Lt. Hamilton for failing to properly supervise the actions of Brooks, Ewing, and Dickerson;

4. Denial of medical care for injuries incurred at the hands of Bradburn, Brooks, Ewing, and Dickerson.

5. Violation of his due process rights under the Fourteenth Amendment by Hearing Officer Brown;

6. Supervisory liability against Warden Streeval for deliberate indifference and failing to enforce policies, resulting in Vaughn's injuries and in the violation of his due process rights by a biased hearing officer; and

7. Liability against the BOP for having outdated policies on ambulatory restraints and for failing to enforce existing policies, which enabled officers to assault him while he was in ambulatory restraints.

The defendants have moved to dismiss Vaughn's claims under FED. R. CIV. P. 12(b)(6) on the grounds that none of his claims are cognizable under *Bivens* and some do not state constitutional violations. Alternatively, they move for summary judgment on the grounds of failure to exhaust and qualified immunity.

### III. DISCUSSION

**A. 12(b)(6) Motion to Dismiss**

The function of a motion to dismiss is to test the legal sufficiency of the complaint, that is, whether the complaint, accepted as true, states a claim for which the law provides a remedy. *Hooper v. North Carolina*, 379 F. Supp. 2d 804, 811 (M.D. N.C. 2005). This requires the court to consider whether any of Vaughn's six complaints are cognizable in a *Bivens* suit.

In 42 U.S.C. § 1983, Congress has provided a remedy against *state* employees for violation of a plaintiff's federal constitutional rights. Congress has not provided any such remedy against federal employees. *Annappareddy v. Pascale*, 996 F.3d 120, 132–33 (4th Cir. 2021). The Supreme Court in 1971 recognized an implied right to damages from individual federal employees, acting under color of federal law, for violation of the Fourth Amendment in

4

*Bivens*. More recently, the Court has strictly limited the scope of permissible claims under *Bivens*, articulating a two-step process for determining whether *Bivens* applies. First, the court must decide whether a claim differs in any meaningful way from the only three Supreme Court cases[1] that have permitted a cause of action against federal employees for violation of constitutional rights. *Ziglar v. Abbasi*, 582 U.S. 120, 139 (2017). If the claim does not fall "precisely under *Bivens, Davis*, or *Carlson*," the court must consider whether other factors warrant hesitation in extending a *Bivens* remedy. *Id.* at 136. The Court identified special factors that weigh against extending *Bivens*:

- The existence of an alternative remedial structure

- Separation-of-powers principles, under which Congress, rather than the judiciary, is the appropriate government branch to make policy decisions

- The potential cost to the government of recognizing a private cause of action, both financially and administratively

- Whether Congress has already enacted relevant legislation, suggesting that it does not want interference from the judiciary

*Id.* at 136–37. A few years later, the Court emphasized and clarified that an implied action under *Bivens* is precluded if "there is *any* rational reason (even one) to think that *Congress* is better suited" to resolve the societal cost-benefit analysis of allowing a suit for damages against a

---

[1] *Bivens*, 403 U.S. at 389 (allowing suit under the Fourth Amendment against agents of the Federal Bureau of Narcotics, in their individual capacities, for placing a man in shackles in front of his family, searching his apartment without a warrant, threatening to arrest his whole family, and arresting him with neither a warrant nor probable cause); *Davis v. Passman*, 442 U.S. 228, 230 (1979) (allowing suit against a Congressman for gender discrimination in violation of the equal protection component of the Fifth Amendment's Due Process Clause); and *Carlson v. Green*, 446 U.S. 14, 18 (1980) (permitting an Eighth Amendment suit against prison officials for deliberate indifference in failing to treat an inmate's asthma, resulting in his death).

federal employee. *Egbert v. Boule*, 596 U.S. 482, 496 (2022). Under separation of powers principles, such policy decisions are reserved to Congress. *Id.* at 498.

*Bivens*, *Davis*, nor *Carlson* did not involve excessive force claims, bystander liability claims, due process disciplinary claims, or supervisory liability claims. The Court has stated that a "claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Hernandez v. Mesa*, 589 U.S. 93, 103 (2020). Because these claims seek to apply *Bivens* in a new context, I must consider whether any factor cautions against extending a *Bivens* remedy to these claims.

**1. Claims 1 and 2 – Excessive Force**

The Fourth Circuit Court of Appeals recently considered excessive force allegations of physical abuse remarkably similar to Vaughn's allegations, occurring at the same penitentiary. *Fields v. Federal Bureau of Prisons*, 109 F.4th 264 (4th Cir. 2024). Under the facts in *Fields*, the Court held that a *Bivens* claim existed against the individual officers involved in using such excessive force on an inmate, even though the plaintiff acknowledged that this was a new context for a *Bivens* claim. *Id.* at 267, 270. The Court's decision, however, was based upon one allegation that is not present in this case: The officers in *Fields* intentionally thwarted the plaintiff's access to the BOP's Administrative Remedy Program, cutting off his access to the alternative remedies that counsel against judicial extension of *Bivens*. *Id.* at 272.

Vaughn has not alleged that officers intentionally stopped him from filing a grievance and exhausting his remedies on the excessive force claim. Rather, in his Second Amended Complaint, Vaughn explained that he filed a BP-9 with the Warden on December 16, 2021, complaining that he knew the DHO (defendant Brown) would not be fair and impartial at the upcoming disciplinary hearing. The Warden never responded to his complaint. Vaughn stated

6

that he could not appeal a decision he never received and was thus precluded from exhausting his remedies.  Supp. Facts for 2nd Am. Compl. at 33, 39, ECF No. 18-1.  Of course, that complaint pertained to the disciplinary hearing, not to a claim of excessive force.  In his response in opposition to the defendants' Motion to Dismiss, Vaughn stated that there "was no way I was gonna be able to utilize the administrative remedy process while being housed at U.S.P. Lee because of what they didn't investigate containing (sic) to staff misconduct," indicating that it was pointless to file a grievance about the excessive force when his grievance about the disciplinary hearing was not properly investigated, in his opinion.  Plntf Resp. to Mot. to Dismiss at 15–16, ECF No. 47.  A subjective opinion that the grievance process will end unfavorably is not the same as an unavailable administrative remedy.  *See Varner v. Tibbs*, No. 5:22-CV-273, 2023 WL 4865015, at *5 (July 31, 2023) ("[H]is failure to appeal was not based on unavailability, but rather his own subjective opinion that 'it felt pointless to even try.'. . . This was a voluntary choice on plaintiff's own part rather than a response to unavailable administrative remedies.")

Because Vaughn has not alleged that administrative remedies were *unavailable* to him, *Fields* is not dispositive of this case.  In the absence of that important distinguishing factor, the court must return to the second question in the analysis, whether other factors warrant hesitation in extending a *Bivens* remedy.  *See Jones v. Director*, No. 3:23CV249(RCY), 2024 WL 4206789 (E.D. Va. Sept. 16, 2024) (distinguishing *Fields*).

The existence of alternative remedies usually precludes a court from authorizing the extension of *Bivens* to a new context.  *Ziglar v. Abbasi*, 582 U.S. 120, 148 (2017).  Another factor that suggests caution is that Congress has actively legislated on prisoner litigation and has not enacted a statutory cause of action for federal inmates to sue for violation of constitutional

7

rights. *Ziglar v. Abbasi*, 582 U.S. 120, 148–49 (2017). Separation of powers principles suggest caution before the judiciary intrudes on the province of Congress to legislate appropriate causes of action. Finally, the potential consequences of implying a *Bivens* remedy also warrant hesitation. By authorizing a *Bivens* action for excessive force, the court could be opening the door "for a multitude of cases each year wherein prisoners claim excessive force in hopes of securing monetary damages." *Fields*, 109 F.4th at 281 (dissenting opinion). Federal courts "are ill-suited 'to predict the systemwide consequences of recognizing a cause of action under *Bivens*.'" *Bulger v. Hurwitz*, 62 F.4th 127, 142 (4th Cir. 2023) (quoting *Egbert*, 596 U.S. at 493). As the Supreme Court stated in *Egbert*, if there is any reason to think that judicial intrusion might be inappropriate, "or even if there is the *'potential'* for such consequences," then the court should deny a *Bivens* remedy.

To the extent Vaughn alleges that the force applied by defendants Brooks, Ewing, and Dickerson were in retaliation for his alleged assault on Officer Bradburn, the Court has already ruled that retaliation claims are not available under *Bivens*. *Egbert*, 596 U.S. at 498.

2. **Claim 3 – Bystander Liability**

The claims against Thomas and Hamilton are equally unavailable under *Bivens*. The Fourth Circuit recently held that *Bivens* does not extend to causes of action under the Eighth Amendment for failing to intervene to protect an inmate from violence by other prisoners. *Bulger*, 62 F.4th at 139. *Bivens* similarly is not an available remedy for failure to protect an inmate from another prison employee; that is a "new context." The same reasons given above caution against extending *Bivens* to this new context.

3. **Claim 4 – Denial of Medical Care**

8

At first glance, a claim for failure to treat or inadequate medical treatment of a condition might seem similar to *Carlson v. Green*, which permitted *Bivens* recovery under the Eighth Amendment for medical indifference to an inmate's asthma attack, resulting in the inmate's death. 446 U.S. 14, 16 (1980). However, the Supreme Court has stated that a cause of action arises in a new context if it differs "in a meaningful way" from the three previous *Bivens* cases decided by the Supreme Court. *Ziglar*, 582 U.S. at 139. A claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a *Bivens* damages remedy was previously granted. *Hernandez*, 589 U.S. at 103.

Vaughn alleges that he was denied medical treatment for black eyes, a swollen nose and face, sore ribs, and abrasions on his wrists and ankles. Supp. Facts for 2nd Am. Compl. at 31. The medical records Vaughn attached to his complaint note that Vaughn had an abraded lower lip when first placed in restraints, and approximately twelve hours later, he had abrasions on his right ankle. Second Am. Compl. Ex. A at 10, 13, ECF No. 10, 13. Either way, Vaughn's injuries were not life-threatening, making this case different in a meaningful way from the fatal 8-hour asthma attack in *Carlson*.

Prior decisions of this court and of others within this Circuit have held that cases involving failure to provide non-emergent, non-fatal medical care arise in a different context from *Carlson* and are outside the scope of *Bivens*. *E.g., Spivey v. Breckon*, No. 7:20cv00400, 2024 WL 1184445, at *7 (March 18, 2024); *Washington v. Fed. Bureau of Prisons*, No. 5:16-cv-3913, 2022 WL 3701577, at *5 (D.S.C. Aug. 26, 2022); *Sharp v. United States Marshals Serv.*, No. 5:20-cv-03282, 2022 WL 3573860, at *7 (E.D.N.C. July 15, 2022). Accordingly, Vaughn's claim for denial of medical care must be dismissed, as *Bivens* provides no remedy.

9

4. **Claim 5 – Due Process Violation by Disciplinary Hearing Officer**

Vaughn's due process claims against Hearing Officer Brown fare no better. Claims for procedural due process violations in prison disciplinary hearings are not cognizable under *Bivens*. *Mays v. Smith*, 70 F.4th 198, 205 (4th Cir. 2023).

5. **Claim 6 – Supervisory Liability**

Vaughn's claim against Warden Streeval for "subject[ing] [Vaughn] to [a] discipline process that was fundamentally unfair," thereby depriving him of his due process rights, is not available under *Bivens* for the same reasons stated above. Likewise, his claim against Streeval for alleged deliberate indifference to the physical abuse of inmates and the failure to make corrections officers follow BOP policy on proper use of restraints is not cognizable under *Bivens*. Indeed, these claims are like those that the Supreme Court disallowed in *Ziglar*, 582 U.S. at 146 ("The allegation is that Warden Hasty violated the Fifth Amendment by allowing prison guards to abuse respondents."). Accordingly, any remedy for such alleged violations must come from Congress, not from judicial implication of a cause of action.

6. **Claim 7 – Liability of the BOP**

A *Bivens* action is not available against federal agencies, only against federal officials individually. *Doe v. Chao*, 306 F.3d 170, 185 (4th Cir. 2002). Vaughn's claim against the BOP must also be dismissed.

## CONCLUSION

For the reasons stated, I will grant the defendants' Motion to Dismiss and dismiss Vaughn's complaint. Because this fully disposes of the case, there is no need to address the defendants' Motion for Summary Judgment, which shall be dismissed as moot.

Enter: March 28, 2025

/s/ *Robert S. Ballou*

Robert S. Ballou
United States District Judge